**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 09-4810**

---

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

REGINALD DARWIN MORTON, a/k/a Jay, a/k/a Boogie, a/k/a
Jason, a/k/a Novacaine,

                Defendant - Appellant.

---

**No. 09-5004**

---

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

CHARLES JERMAINE KING, JR., a/k/a Zig-Lah, a/k/a Ziggy,

                Defendant - Appellant.

---

Appeals from the United States District Court for the Western
District of Virginia, at Abingdon. James P. Jones, District
Judge. (1:08-cr-00024-jpj-pms-14; 1:08-cr-00041-jpj-pms-1)

---

Argued: May 10, 2011          Decided: August 18, 2011

---

Before NIEMEYER, KING, and KEENAN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded for further proceedings by unpublished per curiam opinion.

———————————

**ARGUED:** Helen Eckert Phillips, MCGLOTHLIN AND PHILLIPS, PLLC, Lebanon, Virginia; David Samir Saliba, SALIBA & COMPANY, PC, Wytheville, Virginia, for Appellants. Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Reginald Darwin Morton and Charles Jermaine King, Jr., were convicted of participation in a drug trafficking conspiracy, in violation of 21 U.S.C. §§ 841 and 846. By special verdicts, the jury found Morton guilty of conspiring to distribute or possess with intent to distribute 50 grams or more of cocaine base and less than 500 grams of cocaine, and King, the same with respect to less than 50 but at least 5 grams of cocaine base. The district court sentenced Morton to 240 months' imprisonment and King to 180 months' imprisonment.

Both defendants appealed, raising numerous issues with respect to their trial and sentencing. For the reasons that follow, we affirm their convictions, and, with respect to Morton's sentence, we vacate and remand for resentencing, in light of United States v. Simmons, No. 08-4475, __ F.3d __, __ WL __ (4th Cir. Aug. 17, 2011) (en banc).

I

Morton and King were involved in a large drug trafficking conspiracy which operated in the Bristol, Virginia area. The conspiracy was orchestrated in large part by Derrick Evans, Kerry Lee, Bryant Kelly Pride, and Oedipus Mumphrey, all of whom were affiliated with Evans' music label, "Kan't Stop Records." Evans, Lee, Pride, and Mumphrey recruited several other

3

participants, including Morton and King, to help sell cocaine and crack from area hotels, mobile homes, and locations controlled by Evans.

Morton's involvement began in April 2006 when he traveled to Bristol with Mumphrey to sell between 500 and 1,000 grams of cocaine. Thereafter, Morton continued to sell crack cocaine to Bristol residents, several of whom testified against him at trial. The evidence also showed that Morton was present when Bristol police officers discovered baking soda, a hot plate, and other equipment used to prepare crack cocaine in a vehicle belonging to one of Mumphrey's associates.

King's involvement was of a similar nature. He purchased large quantities of crack cocaine from Lee and Pride and then resold the drugs to third parties. At least six individuals testified that they bought crack cocaine from King, often on a recurring basis. One of these individuals executed a controlled purchase of crack cocaine from King in April 2007, which ultimately led to King's arrest and conviction in state court. Other witnesses linked King to Kan't Stop Records and several key members of the conspiracy, including Pride and Mumphrey.

Both defendants were convicted of participating in the conspiracy. Morton received a 20-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A), which was a variance sentence because his offense level of 38 and criminal history of

VI indicated an advisory Guidelines range of 360 months to life. The Guidelines recommendation, as well as the mandatory minimum sentence under § 841(b)(1)(A), depended in part on the fact that Morton had a prior North Carolina conviction for cocaine possession, for which he received a suspended sentence of 8 to 10 months' imprisonment. He objected to use of that conviction because, he argued, it did not qualify as a "felony drug offense," as necessary for the enhancement set forth in § 841(b)(1)(A), and the district court overruled his objection. The court imposed the variance sentence based on its rejection in part of the 100 to 1 crack-to-powder ratio in effect at the time.

King was sentenced to 180 months' imprisonment, to run concurrently with his imprisonment on state law charges.

This appeal followed.


II

Both Morton and King contend that the district court erred in refusing to grant their motions to dismiss the indictment, based on their claims that coconspirator Paul Vaughn gave perjured testimony before the grand jury to implicate them in the conspiracy. At the time, Vaughn had agreed to plead guilty to his involvement in the conspiracy and to cooperate with the

prosecution by testifying regarding the roles played by others, including Morton and King.

Initially, Vaughn fulfilled his end of the plea bargain, as he testified before the grand jury and at two trials, each involving coconspirators other than Morton and King. But after he ended up in the same pod at the Roanoke city jail as other coconspirators, against whom he had testified, he ceased cooperating. Indeed, he began sending letters to the district court indicating that he had lied in his grand jury and trial testimony. He wrote that he "did not know anything" about the "Kan't Stop conspiracy," but "made up stuff" because government investigators and prosecutors had "threaten[ed] [him] and [his] family with life imprisonment" if he did not "make up something on Mumphrey, Morton, and the rest in this case."

Morton and King argue that Vaughn's false grand jury testimony violated their Fifth Amendment right "to stand trial on an indictment untainted by perjury."

The district court held several hearings on this issue and ultimately found that Vaughn had not lied in his original testimony. The court stated:

> Basically, I find that Mr. Vaughn testified truthfully before the grand jury and in his prior testimony, and his information originally to the authorities was truthful, and that what he has testified to today [seeking to recant his earlier testimony] is untruthful. He has lied today about his involvement, and that's based on my review of the entire record in

> this case, as well as my opportunity to observe Mr.
> Vaughn not only today and at prior hearings, but in
> his trial testimony. Much of the testimony that he
> gives is simply preposterous. It's incredible on its
> face. But there is abundant corroboration of his deep
> involvement in this conspiracy.

In a subsequent opinion, the district court elaborated, pointing

out that Vaughn's grand jury and trial statements were

consistent with a wide range of other evidence, whereas his

post-retraction statements -- including claims that he had

traveled to Bristol not to sell drugs but to meet with recording

artist Ludacris -- were inconsistent, entirely new, and not

believable.

Morton and King have not offered any reason to attribute

clear error to the district court's factual findings. Moreover,

the petit jury's guilty verdict, which was not based on any

testimony from Vaughn, as he did not testify at their trial,

rendered "any error in the grand jury proceeding connected with

the charging decision . . . harmless beyond a reasonable doubt."

United States v. Mechanik, 475 U.S. 66, 70 (1986). Accordingly,

we reject Morton and King's argument.


III

Morton and King also contend that the district court erred

in denying their motions for a change of venue by transferring

the case from the Abingdon Division to either the Lynchburg

7

Division or the Charlottesville Division. They argue that the Abingdon Division was "inherently prejudicial" because they are African-Americans and only 2.5% of the population in the Abingdon Division is African-American. They note that African-Americans constitute 18% of the population in Lynchburg and 15% in Charlottesville. The district court denied their motions, concluding that there was "no evidence at all . . . that there[] [had] been any intentional discrimination by the Government or in the process of selection of the jurors" or that "the jury panels ha[d] not been selected absolutely in accord with law."

Morton and King have offered no evidence of intentional discrimination. In making their argument, they rely only on the dearth of African-Americans in the jury pool. But simple reliance on such statistics is insufficient, as "[d]efendants are not entitled to a jury of any particular composition." Taylor v. Louisiana, 419 U.S. 522, 538 (1975); see also United States v. Nelson, 102 F.3d 1344, 1354 (4th Cir. 1996). Accordingly, we conclude that the district court did not abuse its discretion in denying the defendants' motion for a change of venue.

IV

Morton and King also contend that the district court erred in denying their motions for judgment of acquittal, based on an

8

insufficiency of the evidence. Although Morton and King acknowledge that they bought drugs from and sold drugs to members of the conspiracy, they argue that this "buyer-seller relationship" does not, on its own, amount to participation in the conspiracy.

The jury found otherwise, and its verdict must be sustained "if there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). To prove conspiracy, the government had to demonstrate, through direct or circumstantial evidence, that (1) two or more persons agreed to distribute cocaine; (2) Morton and King knew of the conspiracy; and (3) they "knowingly and voluntarily became a part of" the conspiracy. See United States v. Yearwood, 518 F.3d 220, 227 (4th Cir. 2008) (quoting Burgos, 94 F.3d at 857). Based on the record, we conclude that each of the elements was amply supported by substantial evidence. Mumphrey testified that Morton traveled with him to Bristol for the express purpose of selling cocaine, and several other witnesses corroborated not only that claim, but also other evidence of Morton's ongoing role in the overall drug trafficking operations. Similarly, the record shows that King was affiliated with Evans' music label, Kan't Stop Records; that he bought crack cocaine from Lee and

Pride; and that he often sold those drugs from homes controlled by Evans.

V

Morton challenges his sentencing, arguing (1) that the special verdicts returned against him and King were inherently inconsistent and therefore the district court erred in sentencing him on the higher drug amounts attributed to him by the jury; and (2) that the district court erred in increasing his sentence to the mandatory minimum of 20 years based on a prior state court drug conviction that, he contends, was not a felony and should not therefore have enhanced his sentence.  We address these arguments seriatim.

A

With respect to the inconsistent verdicts, Morton argues that the jury, which found both Morton and King guilty based on the same evidence, attributed 50 grams or more of crack to him but lower amounts to King and coconspirator Tyson Anderson. Because the verdicts were inconsistent, he maintains, he should have received the benefit of the lower attributions.

Morton's argument, however, is facially unpersuasive.  The fact that a jury imputed greater amounts of drugs to him than to other members of the conspiracy does not call into question the validity or the legitimacy of the resulting guilty verdicts but

only reflects the jury's view of the evidence. See United States v. Green, 599 F.3d 360, 369 (4th Cir. 2010) (citing United States v. Powell, 469 U.S. 57, 64 (1984); Dunn v. United States, 284 U.S. 390, 393 (1932)). And the fact that the Sentencing Guidelines treat different drug quantities differently for purposes of sentencing is irrelevant to Morton's guilty verdict.

B

With respect to the district court's use of his prior North Carolina state conviction, Morton argues that the conviction was for a misdemeanor, not a felony, and only a felony could enhance his sentence under 21 U.S.C. § 841(b)(1)(A). A felony for purposes of § 841 is defined to be a crime "punishable by imprisonment for more than one year." Id. § 802(44). Morton argues that his prior drug offense was punishable by no more than 10 months' imprisonment. See N.C. Gen. Stat. § 15A-1340.17(c)-(d) (setting out minimum and maximum sentences applicable under North Carolina's "structured sentencing" regime); J.A. 1697 (documenting Morton's prior conviction).

When Morton raised this argument in the district court, it was foreclosed by our decision in United States v. Harp, 406 F.3d 242 (4th Cir. 2005). Subsequently, however, we overruled Harp with our en banc decision in Simmons, where the same

argument was presented and sustained in favor of the defendant. See United States v. Simmons, No. 08-4475, __ F.3d __, __ WL __ (4th Cir. Aug. 17, 2011) (en banc).  In view of Simmons, we will likewise sustain Morton's objection here, vacating his sentence and remanding the case to the district court for resentencing.


                                    VI

    King contends that after the district court found that his rights under the Interstate Agreement on Detainers ("IAD") had been violated, it erred in dismissing the original indictment against him without prejudice, rather than with prejudice, as he had requested.  The government does not challenge the IAD violation, as King was serving a state sentence in the Bristol city jail when he was taken into custody by the United States Marshal's Service, brought to federal court, and then returned to the Bristol city jail.  It notes, however, that § 9 of the IAD Act provides that for a violation, the court can dismiss the case with or without prejudice, depending on various factors, such as the seriousness of the offense, the factual circumstances leading to the IAD violation, and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.  Taking those matters into consideration, the district court found, as a

                                    12

matter of its discretion, that it was appropriate to dismiss the original indictment without prejudice.

Travis Dell Jones, one of King's coconspirators, has already raised this issue during a different trial, and the district court decided the issue against him. When considering the same issue raised by King, the district court adopted its opinion from Jones' trial as its reasons for denying King's motion. When Jones appealed the district court's ruling, we affirmed. See United States v. Jones, 367 Fed. Appx. 482 (4th Cir. 2010). For the same reasons, we now reject King's argument here.

VII

Finally, King asserts that the district court erred in admitting evidence that he had sold cocaine to an undercover informant on two separate occasions and that he had pleaded guilty to state charges in each instance. He argues that this evidence was used to prove that he acted in conformity with his allegedly bad character and that it should have been excluded under Federal Rule of Evidence 404(b).

We find this argument to be without merit because the evidence admitted was intrinsic to the conspiracy involved in this case. Evidence of a defendant's criminal conduct is "intrinsic" when it is "inextricably intertwined" with conduct

that has been charged, or "part of a single criminal episode."
United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996) (quoting
United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993)).
Because the evidence of the two transactions was within the
scope of the conspiracy charged, Rule 404(b) was irrelevant.
See Chin, 83 F.3d at 88.

*     *     *

For the reasons given, we affirm Morton's conviction,
vacate his sentence, and remand for resentencing in accordance
with Simmons.  With respect to the issues raised by King, we
affirm.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED FOR FURTHER PROCEEDINGS